## KENNEDY *v.* STATE OF INDIANA.

[No. 26,090. Filed June 14, 1935. Rehearing denied
January 6, 1936.]

288

*Ray K. Shively, Gath P. Freeman, Leland L. Bond* and *Charles F. Remy,* for appellant.

*James M. Ogden,* Attorney-General, and *Merl M. Wall,* Deputy Attorney-General, for the State.

ROLL, J.—Appellant was charged, by affidavit, in five counts, with the crime of embezzlement under §2470, Burns 1926, §10-1704, Burns 1933, §2467, Baldwin's 1934. Appellant filed separate motions to quash the second, third, fourth, and fifth counts of the affidavit which were overruled. Appellant waived arraignment and entered a plea of not guilty. The case was submitted to a jury which returned a verdict of guilty as charged in the affidavit. Appellant's motion for a new trial was over-

ruled. Appellant assigns as error the overruling of his motion to quash the second, third, fourth, and fifth counts of the affidavit and in overruling his motion for a new trial.

The first count of the affidavit charges in substance: That on, or about, the 17th day of August, 1929, one William P. Kennedy, being then and there the agent of one Minnie Fields, did then and there, by virtue of such agency, have control and possession of the sum of two thousand three hundred eighty-seven and 43/100 Dollars ($2,387.43) in money, to the possession and ownership of which the said Minnie Fields was then and there lawfully entitled; that the said William P. Kennedy, while so acting as agent aforesaid and being in the possession and control of said money as aforesaid, did then and there unlawfully, feloniously, and fraudulently take, purloin, secrete, embezzle, and appropriate to his own use, and the use of Adelaide K. DuBois, Emmazetta K. Bonnelle, Samuel Lambert and Flora Kennedy, the money aforesaid, contrary, etc.

The second count is in substance the same as the first, except it charges the embezzling of a check made payable by the said Minnie Fields to William P. Kennedy in the sum of $2,387.43.

The third count charges:

"That on this day before Foster Osborn, Clerk of the Circuit Court of Union County, in the State of Indiana, personally came Minnie Fields, who being first duly sworn, upon her oath, says: That on the 17th day of August, 1929, at said County and State aforesaid, one William P. Kennedy, Adelaide K. DuBois, Emmazetta K. Bonnelle, Samuel Lambert and Flora Kennedy were partners doing a banking business as such partnership under the firm name of J. P. Kennedy & Co., and owning and operating a private bank under the laws of the State of Indiana, which bank was known and designated as the Citizens Bank in the town of Liberty, said county and State; that said William P. Ken-

nedy was then and there the active manager of said partnership, its affairs and business, and the cashier of said Citizens Bank owned by said partners; that at said county and State aforesaid said J. P. Kennedy & Co. was then and there acting as the agent of Minnie Fields, and by virtue of being then and there the agent of said Minnie Fields, did then and there have control and possession of the sum of Two Thousand Three Hundred Eighty-seven and 43/100 Dollars ($2,387.43) in money, to be used by said partnership in the purchase of United States, Municipal, or Gravel Road non-taxable bonds, and for no other purpose, to the possession and ownership of which money the said Minnie Fields was then and there lawfully entitled; that said William P. Kennedy, as manager of said partnership, and cashier of said Citizens Bank owned by said partners, did then and there cause said bank and partnership to unlawfully, feloniously, and fraudulently take, purloin, secrete, embezzle, and appropriate said sum of money to the use of said William P. Kennedy, Adelaide K. DuBois, Emmazetta K. Bonnelle, Samuel Lambert and Flora Kennedy, as partners, in the firm of said J. P. Kennedy & Co., and as owners of said Citizens Bank contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

The fourth count is in substance the same as the third except the fourth count charges the embezzlement of the check, and that he appropriated said check, money, proceeds and credit derived therefrom to the use of the parties named.

The fifth count of the affidavit charged that appellant and the other members of the partnership, naming them, were doing business under the firm name of J. P. Kennedy & Co. and owned and operated a private bank, designated the Citizens Bank, and that appellant was the active manager of said partnership and the cashier of said bank and as such had charge of the business and affairs of said partnership and bank. The affidavit further charged that Minnie Fields delivered to William

P. Kennedy as cashier of said bank a check for $2,387.43, payable to William P. Kennedy as cashier for the sole and only purpose of buying bonds. That the said J. P. Kennedy & Co. and William P. Kennedy as the manager and cashier was the agent of the said Minnie Fields and by virtue thereof had possession and control of said check and the money, proceeds and credit derived therefrom; that appellant while so acting as agent aforesaid and while in the possession of said check and, etc., did then and there unlawfully, feloniously and fraudulently take, purloin, secrete, embezzle, and appropriate the same to his own use and to the use of the different partners and owners of said bank, etc.

Appellant filed separate motions to quash each count of the affidavit which were overruled by the court and this is the first error assigned for reversal of this cause. Appellant has waived any question as to the sufficiency of the first, second, and fifth count, but urges the insufficiency of third and fourth counts. It is appellant's position that the evidence affirmatively shows that the verdict must have been upon the third or fourth count and not upon the first, second, or fifth and therefore if the third or fourth count is bad the case must be reversed. The point urged as to the insufficiency of the third and fourth counts is on the ground of uncertainty, in that neither of said counts directly or positively alleges that either the partnership or the bank did unlawfully, feloniously, or fraudulently take, purloin, secrete, embezzle, or appropriate said property, and for that reason the said third and fourth counts are too indefinite and uncertain to state a public offense. We cannot agree with appellant's position on this point. Appellant erroneously assumes that the theory of the third and fourth counts is that appellant is charged as an accessory and not as a principal. The third and fourth counts of the affidavit charge that,

"William P. Kennedy, as manager of said partnership and cashier of said Citizens Bank owned by said partners, did then and there cause said bank and partnership to unlawfully, feloniously and fraudulently take, purloin, secrete, embezzle and appropriate said sum of money to the use of said William P. Kennedy, Adelaide K. DuBois, Emmazetta K. Bonnelle, Samuel Lambert and Flora Kennedy, as partners, in the firm of said J. P. Kennedy & Co. and as owners of the said Citizens Bank."

This we think is a direct and positive charge that appellant, as acting manager of the J. P. Kennedy & Co. and as cashier of the Citizens Bank, appropriated and embezzled the money of Minnie Fields to the use of himself and the other members of said partnership, and to the use of the Bank. Under §2224, Burns Ann. St. 1926, §9-1126, Burns 1933, §2205, Baldwin's 1934, an affidavit is sufficient if the offense charged is stated with such degree of certainty that the court may pronounce judgment upon a conviction according to the rights of the case. And under §2225, Burns Ann. St. 1926, cl. 10, §9-1127, Burns 1933, §2206, Baldwin's 1934, an affidavit should not be quashed for any defect or imperfections which does not tend to the prejudice of the substantial rights of the defendant upon the merits. These provisions of our criminal code must be kept in mind in considering the sufficiency of an affidavit as against a motion to quash. Unless we can say that the third and fourth counts of the affidavit are so uncertain and indefinite that appellant was not apprised of the character and nature of the charge against him, the motion to quash was properly overruled. *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819; *Hart* v. *State* (1914), 101 Ind. 23, 103 N. E. 846. Neither the bank nor the partnership as such could commit the crime of embezzlement. They act only through their officers. Hence appellant, as the agent or manager and who performed the

alleged unlawful acts as herein set forth, is charged with the crime. We have read these counts very carefully and have concluded that they are sufficient to apprise the appellant of the nature and character of the charge against him, that appellant's substantial rights have not in any way been prejudiced by any indefiniteness or uncertainty in the affidavit. *Williams* v. *State* (1919), 188 Ind. 283, 123 N. E. 209; *Hart* v. *State, supra.* We find no error in overruling appellant's motion to quash the third and fourth counts of the affidavit.

Appellant's second error relied upon is the overruling of his motion for a change of venue from the county. We learn from the record that appellant herein ██ was charged with embezzlement by a grand jury indictment which was docketed as cause No. 995, upon which a trial was had but the jury failed to agree upon a verdict. Afterwards the indictment was dismissed and the present affidavit was filed and docketed as cause No. 1020. Appellant filed his affidavit for a change of venue from the county in cause No. 995, and did not refile said motion in cause No. 1020. It is insisted by the State that even if there was error in overruling the motion for a change of venue from the county in cause No. 995, it could not be presented in this appeal for the reason it was not refiled in cause No. 1020. It is appellant's position that the dismissal of the indictment in cause No. 995, and the refiling of the affidavit in cause No. 1020, was one continuous action and it was not necessary to refile the motion for a change of venue from the county in cause No. 1020. We need not decide this question as the record shows that the motion was supported by an affidavit to the effect that owing to the fact appellant was a cashier of a bank and that a great number of depositors in Union county would suffer financial loss on account thereof they were prejudiced against this defendant. Also that certain articles con-

cerning the indictment of defendant appeared in a newspaper printed and published in the town of Liberty, Union county, Indiana, and that said article tended to prejudice the minds of the people of said county against him. We do not find a copy of the newspaper article anywhere set out in appellant's brief nor do we find it in the record. Appellee filed a counter affidavit to the effect that the affiant was well acquainted with the citizens of Union county and that after the indictment herein had been returned against the defendant he had been in every township of the county and had talked with a large number of citizens of said county about William P. Kennedy and about the matters alleged in the indictment. That he did not discover any prejudice against him that would prevent him from having a fair trial in Union county. Section 2239, Burns 1926, §9-1305, Burns 1933, §2226, Baldwin's 1934, provides that when an affidavit for change of venue from the county is founded upon excitement or prejudice in the county against the defendant and is filed in a criminal case punishable by death, the court shall grant a change of venue. In cases not punishable by death, it is a matter of discretion with the court whether the change shall be granted. *Leach* v. *State* (1912), 177 Ind. 234, 97 N. E. 792; *Hinkle* v. *State* (1910), 174 Ind. 276, 91 N. E. 1090. The ruling of the trial court on a motion for a change of venue as to the existence of excitement and prejudice upon conflicting affidavits presents an issue of fact to be determined by the court and is conclusive on appeal. *Scheerer* v. *State* (1925), 197 Ind. 155, 158, 159, 149 N. E. 892; *Hinshaw* v. *State* (1919), 188 Ind. 447, 124 N. E. 458. It was not error to refuse to grant a change of venue.

Appellant's third error relied upon for reversal was the overruling of his motion for a peremptory instruction

directing the jury to return a verdict in favor of defendant, which instruction was tendered at the close of the state's evidence. The court overruled this motion whereupon the trial was resumed and appellant proceeded to introduce his evidence in defense of the action.

In the case of *Wukina* v. *State* (1920), 189 Ind. 535, 128 N. E. 435, the defendant at the close of the state's case in chief filed a motion to be discharged on the ground of the insufficiency of the evidence, which motion the court overruled. After the court's refusal to discharge him he introduced evidence. The refusal of the trial court to discharge him was one of the causes assigned in his motion for a new trial. In passing upon this question the court said (p. 536) :

"If he desired to contest the sufficiency of the state's case in chief, he should have stood on his exception to that ruling of the court. His failure to do that leaves for our consideration only the sufficiency of the evidence to sustain the conviction."

In *Bowen* v. *State* (1920), 189 Ind. 644, 128 N. E. 926, this court said (p. 651) :

"The refusal of the trial court to give the jury a peremptory instruction in favor of the defendant at the conclusion of the state's evidence is assigned as error. . . . However, by proceeding with the introduction of evidence after his motion was overruled, the defendant waived the motion."

Appellant's fourth proposition relates to the introduction of certain evidence which the trial court permitted to be introduced over the objection of appellant. Samuel P. Good, a bank examiner, was asked the question, "Was then that sum of $88,-625.00 a liability of the Citizens Bank in March, 1929, when you examined the bank?"

The evidence shows that Mr. Good was employed by the State of Indiana as a bank examiner, and as such

bank examiner he examined the books of the Citizens Bank in March, 1929. That some forty or fifty customers had left bonds or money with the J. P. Kennedy & Co. for safe keeping, or had left money with this firm with which to purchase bonds. That William P. Kennedy would place such bonds or money to the credit of the J. P. Kennedy Special Account. The record of this account was kept separate from the records of all other accounts. It was kept in a small black book but the money itself went in the general funds of the bank and became a part of the general assets of the bank. The black book containing the record of J. P. Kennedy & Co. Special Account was not turned over to the bank examiners, nor did they know of any such account when they examined the bank. This account, in March, 1929, amounted to $88,625.00 and it was in reference to this account that the question objected to was directed. The question was whether or not this account was a liability of the bank. If the state meant to have the witness to state his opinion as to whether the account listed in the black book was, as a matter of law, a liability of the Citizens Bank in March, 1929, we think it was incompetent. But we do not so interpret this question. When the record is read in the light of all the facts developed by this witness, it is apparent that what the state intended by this question and was so understood by the court and jury was whether or not the witness, had he known the $88,625.00 represented bonds and money deposited with the bank or the J. P. Kennedy & Co. for safe keeping, would have listed these items on the liability side of his report. In other words whether or not, as a bookkeeping proposition, the items making up the $88,625.00 should be listed as liabilities. Under this view we are of the opinion that the witness, as an expert book accountant and as a bank examiner was competent to answer the question and that the question was proper.

It is further shown that Elmer F. Bossert in response to questions put to him by counsel for appellant testified that the account of J. P. Kennedy & Co. Special, constituted a liability of the bank, which rendered the evidence given by the witness Good, harmless, even though improperly admitted. The trial court did not commit reversible error in admitting this evidence. *Shockley* v. *State* (1924), 194 Ind. 321, 142 N. E. 850; *Dillon* v. *State* (1924), 194 Ind. 600, 142 N. E. 643; *Lee* v. *State* (1922), 191 Ind. 515, 132 N. E. 582.

Appellant objected to the question, "Didn't you know, during the year 1929, that it was improper and unlawful for a bank to loan more than 20 per cent of its capital to any one customer?" "I did not." It has been held in *Perfect* v. *State* (1923), 197 Ind. 401-408, 141 N. E. 52, that even though appellant was erroneously required to answer a question and where the answer was negative and favorable to appellant, he could not be harmed thereby. *Shears* v. *State* (1897), 147 Ind. 51, 46 N. E. 331.

Appellant objected to the introduction in evidence of State's exhibit No. 50, which was a financial statement of J. P. Kennedy & Co., prepared by appellant, which statement was shown to be false. Appellant's objection was that this evidence was immaterial and irrelevant. This statement of the financial condition of the partnership of the J. P. Kennedy & Co. to the Fletcher American Bank of Indianapolis, Ind., did not show any item listed in the black book which was the Special Account of the J. P. Kennedy & Co. carried in the Citizens Bank. The statement did not show any liabilities at all. In the trial of this case appellant testified that the reason he did not exhibit the black book, carrying the J. P. Kennedy Special Account, to the bank examiners, was because this account was not the liability of the bank, but was the liability of the

J. P. Kennedy & Co. That the bank and the partnership were two distinct entities. The financial statement (exhibit No. 50) of the J. P. Kennedy & Co., prepared by appellant, tended to contradict appellant's contention, and to show at the time he prepared this statement, he did not recognize that the Special Account kept in the black book was a liability of the bank. Under the objection made by appellant to the introduction of State's exhibit No. 50, the general rule is that the objection must be specific and that a general objection that it is immaterial and irrelevant presents no question for consideration on appeal unless the evidence offered is palpably not admissible for any purpose or under any circumstances. *Williams* v. *State* (1907), 168 Ind. 87, 89, 79 N. E. 1079; *Musser* v. *State* (1901), 157 Ind. 423, 430, 61 N. E. 1, and cases there cited. We find no reversible error in the admission of evidence.

Appellant complains of certain instructions given to the jury by the court and also the refusal to give certain instructions tendered by him. The first instruction complained of is the first part of instruction No. 9. The part objected to by appellant reads as follows:

"In order to warrant a conviction of the defendant in this case, the burden is on the State to prove beyond a reasonable doubt, that said defendant was at the County of Union, and State of Indiana, on or about the 17th day of August, 1929, acting as the agent for Minnie Fields, either in his individual capacity, or as an officer of the Citizens Bank or manager of J. P. Kennedy & Company, and that by virtue of such agency, he did then and there have control and possession of the sum of $2,387.43 in money, or check, or the credit or proceeds of the same, to the possession and ownership of which the said Minnie Fields was then and there lawfully entitled. That said defendant, while so acting as agent aforesaid, and being in possession of said property, as aforesaid, did then and there unlaw-

fully, feloniously and fraudulently take, purloin, secrete, embezzle or appropriate to his own use, or to the use of Adelaide K. DuBois, Emmazetta K. Bonnelle, Samuel Lambert, Flora Kennedy, the Citizens Bank, and J. P. Kennedy & Company, or one of them, said fund or some part thereof, all as alleged in one or the other of said counts of the affidavit."

Appellant's objection to this instruction is stated in his brief as follows:

"The relationship of principal and agent can only exist in the individual capacity of the parties, and cannot arise or exist by reason of the fact that a person has deposited money in a bank and that a partner in said banking business or an officer or manager thereof has been instrumental in the deposit of said funds as such partner or officer. In the case at bar, the appellant did nothing excepting to receive, on behalf of J. P. Kennedy & Co., the funds of Minnie Fields, and execute a receipt therefor in the name of J. P. Kennedy & Co., and then see that the moneys were deposited in its account in the Bank owned and operated by said J. P. Kennedy & Co. From these facts it cannot be contended that the appellant was the agent of Minnie Fields in the handling of said funds."

It will be noted that appellant's objection argues the sufficiency of the evidence to establish the relationship of agency between appellant and Minnie Fields, rather than any misstatement of the law in this instruction. Whether appellant in his individual capacity or in his capacity as cashier of the Citizens Bank or manager of the J. P. Kennedy & Co. acted as the agent of Minnie Fields in the transaction here in question was a fact to be proven by the evidence and submitted to the jury for its determination. This is the theory of instruction No. 9. We do not think appellant's objection is well taken.

Appellant next urges that the trial court erred in refusing to give to the jury his tendered instruction No. 10, which reads as follows:

"You are further instructed that where ▉ money is deposited with another person or firm for the purpose of being invested in bonds, to be delivered to the depositor upon thirty days' notice by the depositor, the effect of such deposit is that the said other person or firm is not required to deliver such bonds or the moneys so deposited until such thirty days' notice has been given by the depositor and the time of such notice has expired, and such receipt has been duly endorsed by the depositor and surrendered."

The evidence showed that Minnie Fields went to the Citizens Bank, of Liberty, Indiana, for the purpose of purchasing some non-taxable government, gravel road, or municipal bonds. That appellant was the cashier and general manager of the Citizens Bank; that she told appellant what she wanted and was told by appellant that they did not have the bonds on hands but would get them for her in a few days. Appellant filled out a check for the sum of money she desired to invest, to-wit: $2,387.43, payable to W. P. Kennedy, or bearer, Citizens Bank, Liberty, Indiana, which check was signed by her and delivered to appellant. Appellant made out a receipt for the same, which was introduced in evidence as State's exhibit No. 10, and is as follows:

"CITIZENS BANK, J. P. KENNEDY & CO., LIBERTY, INDIANA. August 17th, 1929. Received of Minnie Fields, twenty-three hundred eighty-seven Dollars and forty-three cents ($2387.43) to be invested in U. S. Gravel Road or other non-taxable municipal bonds bearing 4¼ or 4½%, deliverable upon thirty days' notice on the return of this receipt properly endorsed. Not Negotiable. Said bonds at market value or at least on a 4.40 basis. J. P. KENNEDY & CO. By Wm. P. Kennedy."

The evidence further shows that appellant told Mrs. Fields at the time the check was delivered and the receipt was made out, that she should come in, within a few days and he would have the bonds. That she did call at the bank within a week or so, but was informed

by appellant that the bonds had not come in yet, but that they would probably be in in a few days and for her to come in the next time they were in town. Mr. Fields, husband of Minnie Fields, did go to the bank in a few days thereafter and repeated his call at the bank some four or five times before the bank closed. Appellant told Mr. Fields on one occasion that the bonds had come in, but they were not the right kind so he sent them back. The evidence further shows that the Citizens Bank or J. P. Kennedy Co. at the time Mrs. Fields first went to the bank to purchase bonds did have government bonds such as she wanted to buy, and the evidence further shows that gravel road bonds or municipal bonds such as Mrs. Fields desired were available in the market within a very few days. The record further shows that appellant took the check of Mrs. Fields and deposited it to the credit of J. P. Kennedy & Co. Special Account. That the proceeds of said check became a part of the general funds of the Citizens Bank, and was used in the business of the bank. That the cash reserve of the bank was far below the legal requirement and that appellant used the J. P. Kennedy Special Account in the following manner. That when the Bank needed additional cash, a check would be drawn against the J. P. Kennedy & Co. Special Account, for whatever amount was determined upon. This check would be used to purchase a like amount of notes held by the bank. These notes so purchased by J. P. Kennedy & Co., a partnership, which owned and operated the Citizens Bank, would be forwarded to some corresponding bank as collateral security along with a note executed by the J. P. Kennedy & Co. to such corresponding bank. The bank making the loan would then place the amount of the loan to the credit of the Citizens Bank and would hold the notes so purchased by J. P. Kennedy & Co. by a check drawn against the J. P. Kennedy & Co. Special

Account as collateral security. In August, 1929, there was deposited in the J. P. Kennedy & Co. Special Account almost $90,000.00, which belonged to various people who had turned over to the J. P. Kennedy & Co. money, bonds, and other valuables for safe keeping or for some specific purpose.

It will be seen from the above facts that the provision in the receipt that the bonds would be delivered to Mrs. Fields upon thirty days' notice, had nothing to do whatever with the crime of embezzlement charged against appellant. It in no way authorized appellant to appropriate the check or the proceeds thereof to his own use or to the use of some one else. Appellant's instruction No. 10 was in no way applicable to the facts in the case nor to the crime charged and was very properly refused. *Collins* v. *State* (1921), 192 Ind. 86, 131 N. E. 390; *Males* v. *State* (1927), 199 Ind. 196, 156 N. E. 403; *Cole* v. *State* (1922), 192 Ind. 29, 134 N. E. 867.

Appellant's tendered instructions Nos. 11, 13, 14, 16, 20, 22, 24, and 26, were sufficiently covered by the instructions given. They attempt to instruct the jury on the law of agency as it relates to this case, and the law of fraudulent intent on the part of appellant. These subjects were fully and fairly covered by the court in other instructions and we think the jury was fully informed as to the law on these subjects.

Appellant's instructions Nos. 15, 19, 21, and 27 were properly refused. Instructions Nos. 15, 19, 21, and 27 have no application to any principle of law involved in this case, and said instruction No. 27 is clearly not applicable to the facts and was correctly refused. Reading the instructions given to the jury in this case we are thoroughly convinced that the jury was fully and fairly instructed in the law and that appellants rights under the law was in no wise prejudiced or unprotected.

Appellant contends with much seriousness that the evidence is insufficient to support the verdict. He says that the evidence does not show a conversion nor does it show criminal intent. He however admitted in oral argument that the evidence does show a trust relationship and contends that her claim against the receiver should be allowed as a preferred claim on the ground that it was a trust fund. It is his position, as stated in oral argument, that inasmuch as Minnie Fields gave a check to appellant, it was given with the understanding on her part, and so received by appellant, that the check should be converted into cash, and in so doing appellant was carrying out the contract, and therefore there was no wrongful conversion of the funds. If he did only that which he was directed to do, such act could not be construed as a conversion. While it is true we think appellant had the right to place the check of Minnie Fields in the proper channels for the purpose of collection, but this he did not do. Instead of sending this check through for collection, he sent it to the Fletcher American Bank for credit, and the evidence shows that the Citizens Bank was given proper credit for the amount of the check. The proceeds of this check went into the general funds of the bank, the same as any other general deposit. This was a violation of the trust relationship and therefore a wrongful conversion of the proceeds of the check. Minnie Fields did not give appellant the check for the purpose of using the proceeds thereof in his own business or the business of J. P. Kennedy & Co. It was given to him as cashier, for a different purpose. She understood as well as he that the proceeds were to be used for one purpose and one purpose only, and that was, for the purchase of certain kinds of bonds. Any other use of the proceeds by appellant would be wrongful and would amount to a conversion. Appellant had no more right to turn over to J. P.

Kennedy & Co. the proceeds of that check for general
banking purposes and to mingle it with the general
funds of the bank than he would to have used it in the
purchase of a horse or a farm. This wrongful appro-
priation of the proceeds of the check is the second essen-
tial element of the crime with which appellant was
charged.

Appellant further contends that the evidence is in-
sufficient to show conversion for the record shows that
when the bank was closed on account of insolvency,
there was a cash reserve of over three thousand dollars
in the bank, and which passed into the hands of the
receiver, and that this fact shows conclusively that ap-
pellant never converted the funds at all, but that they
were left in the bank and are now in the hands of the
receiver, and that Mrs. Fields is entitled to have her
claim paid out of this fund for the reason that the ap-
pellant received her check in trust, and therefore the
proceeds thereof would constitute a trust fund in her
favor.

We cannot agree with the first part of appellant's
contention. The proceeds of the check, we agree, consti-
tuted a trust fund, and appellant had no right or au-
thority to use said funds in any other manner or for
any other purpose than in accordance with the trust
agreement, to-wit, to purchase non-taxable bonds. But
appellant did not do this. He caused it to be deposited,
in effect, with his bank and the proceeds of the check
became mingled with the general funds of the bank, and
was used by the bank for banking purposes. This, we
again say, constituted a wrongful conversion of the fund.

It was said in the case of *Milbrath* v. *State* (1909),
138 Wis. 354, 120 N. W. 252, that (p. 362):

"One may convert money of another to his own
use by paying it out upon his private or personal
debt. *Guenther* v. *State,* 137 Wis. 183, 118 N. W.

640. If this is true, he can convert the money to his own use by putting it into the treasury and mingling it with the funds of an insolvent corporation which is under his control and management and of which he is a stockholder and officer in charge."

The conversion in the instant case took place when he violated his trust relationship and put the proceeds of the check to the use of himself and others instead of using it for the benefit of Mrs. Fields as he had agreed.

Having shown that the evidence establishes a trust relationship between appellant and Minnie Fields and that appellant wrongfully converted said trust funds, it remains to be shown that the evidence sufficiently supports the third element, that of criminal intent, which is necessary to constitute embezzlement under the statute. If appellant or the partnership of J. P. Kennedy & Co. was a trustee of funds derived from the collection of the check, and wrongfully converted said funds with a felonious intent, appellant is guilty of embezzlement under the statute. The jury in determining the question of criminal intent must look at all the facts and circumstances shown by the evidence. The evidence shows that the cash reserve of the Citizens Bank at the time the check in question was delivered to appellant, was far below the legal requirement and continued to become smaller until the bank was closed by the State Banking Department. Under such circumstances it was altogether human for appellant to make a strong effort to raise the cash reserve as much as possible. This condition furnished a strong temptation for appellant to overreach the bounds of propriety and use the funds intrusted to him for a specific purpose, for the use of the bank in its general banking business. The evidence further shows that at the time Minnie Fields attempted to buy non-taxable bonds, J. P. Kennedy & Co. or the Citizens Bank had on

hands available for sale government bonds, in the approximate amount and kind which she desired to purchase, but appellant made no mention of this fact to Mrs. Fields but on the contrary told her in substance that they did not have the kind of bonds she desired, but could and would secure them for her in a few days. The evidence shows that Mrs. Fields or her husband called at the bank five or.six times thereafter and inquired about the bonds, and was told that they had not come in, but that he would have them within a few days. On one occasion appellant told Mr. Fields that the bonds came in but that they were not the kind he wanted to purchase for her and for that reason he returned them. It was shown by the evidence, that appellant made no effort to purchase any bonds for Mrs. Fields. He had not corresponded with any bank or brokerage firm concerning bonds such as Mrs. Fields desired. That no bonds were in fact received by appellant and returned by him as he had told Mr. Fields. The conduct of appellant after he received the money from Minnie Fields certainly was of such a character that the jury was abundantly justified in finding that appellant converted said trust fund with a felonious intent to deprive her of her money.

We think the evidence sufficient to support the verdict. We have examined every alleged error assigned by appellant and find no reversible error.

Judgment affirmed.