346 N.E.2d 569 (1976)
W. Dale McDonald, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 576S135.
Supreme Court of Indiana.
May 12, 1976.
Rehearing Denied July 2, 1976.
*570 Ferd Samper, Jr., Grant W. Hawkins, Indianapolis, for appellant.
Theodore L. Sendak, Atty. Gen., John R. O'Bryan, Deputy Atty. Gen., Indianapolis, for appellee.

*571 OPINION ON PETITION TO TRANSFER
PRENTICE, Justice.
Defendant (Appellant) was indicted for murder in the second degree[1], and convicted of voluntary manslaughter[2], in a trial by jury. The Court of Appeals, First District, affirmed over the defendant's three assigned errors, and the defendant has petitioned for transfer upon the first of such assignments, being that the court erred by giving the State's tendered instruction No. 3, hereinafter related. The Court of Appeals held that any deficiency in said instruction No. 3 was cured by instruction No. 8, also hereinafter related.
It is the opinion of this Court that the judgment of the trial court was properly affirmed, and we would deny transfer without opinion, but for concern that the opinion of the Court of Appeals reported at 333 N.E.2d 882 might lead to an erosion of self-defense as a viable defense, available even to one who was the initial aggressor, notwithstanding that the denial of transfer has no legal effect, other than to terminate the litigation between the parties. Ind.R.Ap.P. 11. Transfer is, therefore, granted and except insofar as hereinafter expressly adopted, the decision and the opinion of the Court of Appeals, First District, is now vacated.
The facts most favorable to the State reveal that on the night of July 26, 1973, Gary Rodman was a passenger in an automobile being driven by Larry Moore in Owen County, Indiana. Another passenger in the car, Clyde Phillips, had at one time been married to defendant's wife, and ill will between defendant and Phillips existed. On that night, as defendant's auto passed Moore's on State Road 43, Phillips urged Moore to sound his horn to notify the defendant to stop. After both vehicles pulled off the road, defendant got out and approached Moore's car with a knife in his hand. Defendant then demanded that everyone get out of the car. At this time Rodman exited from his right-hand passenger seat and walked toward the back of the car. Defendant was then seen walking to the rear of the car from the other side, in pursuit. While standing behind the car Rodman hurled a bottle at defendant, and it struck him but caused no injury. Shortly thereafter, a fight ensued and Rodman was fatally stabbed by the defendant.
At the trial, the defense of self-defense was interposed. At the conclusion of the evidence, the State's tendered instruction No. 3 was given over the defendant's objection. That instruction was as follows:
"You are instructed that if you find from the evidence and the reasonable inferences to be drawn therefrom, the defendant Dale Wilford McDonald (sic) started the fight with the victim, the effect of defendant's fault in instigating the combat, would preclude him from raising the defense of self-defense."
The objection made to the foregoing instruction was as follows:
"* * * Any objection to me giving that, Mr. Zinman?
"MR. ZINMAN: Only, Your Honor, that it says that if they find from the evidence that Dale Wilford McDonald *572 started the fight with the victim, I don't believe that there is one word of evidence of anything except that the bottle was thrown at the defendant. There  in this case cited the Cammack case which we have right here. It was a case where the defendant went over to a guy and started an actual altercation which resulted in death. I don't think that we have anything in this case that would show that there was an instigation of combat and a starting of a fight by the defendant. And giving this instruction would not only be prejudicial but it would be wrong."
The Court at first announced that the instruction would be refused, but after hearing arguments decided to give it, and at that time the defendant's counsel made the following further objection:
"The state knows, Your Honor, that there has to be a reasonable (sic) for that finding to begin with. They would say  he could say, if you find any one of a number of things, but there always has to be a reasonable basis of evidence (sic) before he begins...."
On appeal, the defendant argued that the instruction was erroneous in that it omitted advising that one who was the aggressor initially but withdrew or attempted to withdraw, only to have the other renew or continue the fight, could slay his adversary in self-defense.
Defendant further argues at page 26 of his brief that "* * * there is explicit testimony as to the withdrawal." He has cited us to no portion of the bill of exceptions where such testimony may be found, however; and we find no reference to a withdrawal in the "statement of facts" section of his brief. It does not appear, therefore, that there was any evidence to warrant an instruction upon the availability of the defense to one who was the initial aggressor but had subsequently withdrawn. Tendered instructions upon principles of law not involved in the case and not applicable to the evidence should be refused. Kennedy v. State (1935), 209 Ind. 287 at 303, 196 N.E. 316; Hash v. State (1972), 258 Ind. 692, 284 N.E.2d 770.
From our review of the briefs and transcript, it appears that the defendant's case was a straight "self-defense" issue, i.e. that he (1) acted without fault, (2) was in a place where he had a right to be, and (3) was in real danger of death or great bodily harm or in such apparent danger as caused him in good faith to fear death or great bodily harm. Most certainly the defendant never acknowledged that he was the aggressor, and we have been cited to no evidence of any discernible interruption in the brief encounter that resulted in the homicide. Had there been such evidence, the instructions given would have been insufficient; and it is in this respect that we take exception to the opinion of the Court of Appeals.
Assuming that there was some evidence from which the jury could reasonably have found that the defendant, if at fault in the beginning, had nevertheless withdrawn but that the deceased then became the aggressor, the defendant was entitled to have the jury instructed upon this extraordinary facet of the self-defense doctrine. Eby v. State (1905), 165 Ind. 112, 74 N.E. 890. However, it was incumbent upon the defendant to request it, either by a tendered instruction or by objection to the proposed instruction sufficiently articulated to enlighten the trial court as to the theory relied upon. In Eby v. State, supra, such an instruction was tendered but refused, and we reversed because there was evidence to which it was applicable. We think that it is significant that there was no such tender or objection in the case before us. The objection rendered in trial and hereinbefore fully set forth was predicated upon an alleged absence of evidence that the defendant started the fight  an issue quite different from the one urged on appeal. Objections urged upon appeal must be the same as those raised in the *573 trial court. Tyler v. State (1968), 250 Ind. 419, 236 N.E.2d 815; Rector v. State (1971), 256 Ind. 634, 271 N.E.2d 452; Gradison v. State (1973), 260 Ind. 688, 300 N.E.2d 67. The mere objection to an instruction or an objection for the wrong reason is insufficient. Whitten v. State (1975), Ind., 333 N.E.2d 86; Hitch v. State (1972), 259 Ind. 1, 284 N.E. 783.
Upon the second and third issues presented in the appeal, we concur in and adopt the opinion of the Court of Appeals, First District, as authored by Judge Lybrook, which is as follows:
"Defendant next asserts that the trial court committed reversible error by allowing a State Police Officer to render an opinion as to the propriety of defendant's self-defense claim. Lt. Shumaker stated on redirect examination that he had not witnessed the altercation between defendant and decedent, but based upon personal knowledge of the parties involved and defendant's actions throughout the interrogation proceedings, it was his opinion that defendant's claim of self-defense was meritless.
"As the following colloquy indicates, Lt. Shumaker's opinion regarding a possible self-defense issue was first sought on cross-examination by defense attorney:
"`Q. Did you also suspect there may have been an issue about self-defense here, from what Mr. McDonald told you?
A. I knew that Mr. McDonald was emulating self-defense. However, I know Gary Rodman. I know his size, and I knew 
Q. Now 
MR. PETRI: Wait a minute. Let him finish now. You asked the question.
MR. ZINMAN: The question required a yes or no.
MR. PETRI: No it didn't.
Q. I asked you whether or not you didn't feel also 
A. No, I did not feel there was self-defense involved.
Q. That was your judgment based on your investigation up to that point?
A. That was my judgment to the fact that I was looking at 
Q. Just yes or no. Up to that point of the investigation, you didn't feel that 
MR. PETRI: I think he has a right to explain his answer.
COURT: You may re-examine him on any matter that he opens up, if he doesn't go far enough, but I don't think it's fair for one counsel to set the style of another counsel's examination. So, objection will be overruled.
A. Okay, Sir would you please restate it now?
Q. Okay, at that point in your examination you said, did you not, that you felt a question not in issue some question as to whether or not self-defense may be an issue there?
MR. PETRI: Yes or no. At that point in the investigation.
Q. Did it occur to you?
A. Yes, I thought self-defense would probably be an issue.'
When the prosecutor attempted to focus his redirect examination on Lt. Shumaker's opinions defendant promptly objected, claiming that such testimony was highly prejudicial.
"Generally, the scope and intensity of redirect examination are matters within the discretion of the trial court. Madison v. State (1971), 256 Ind. 353, 269 N.E.2d 164. In view of defendant's solicitation *574 of Lt. Shumaker's opinions as to a possible claim of self-defense, we conclude that the trial court did not abuse its discretion by allowing the State to amplify the opinions on redirect examination. Madison v. State, supra.

"III.
"Defendant lastly contends that the evidence was insufficient to sustain a conviction of voluntary manslaughter and that the State failed its burden of disproving the claim of self-defense beyond a reasonable doubt.
"Initially, we find that Indiana has long held to the principle that either voluntary or involuntary manslaughter is treated as a lesser included offense of murder. Gatchett v. State (1973), Ind., 300 N.E.2d 665; Landers v. State (1975), Ind. App., 331 N.E.2d 770; Hopkins v. State (1975), Ind. App., 323 N.E.2d 232. Thus, if sufficient evidence is presented to the jury by which it could find murder in the first or second degree, the jury may also return a verdict of guilty of voluntary manslaughter, notwithstanding the absence of proof of `sudden heat'. Landers v. State, supra; Hopkins v. State, supra.
"In the instant situation, defendant voluntarily stopped his vehicle in order to confront the occupants of a following car. The testimony revealed that defendant had in his possession a drawn knife as he first exited his car. When decedent opened the passenger door and began walking toward the rear of the car, defendant, on the driver's side, immediately set out in pursuit. Decedent then threw the bottle, and the fatal conflict followed.
"We conclude from the above that sufficient evidence was presented establishing that defendant purposely and maliciously took the life of another, IC 1971, XX-X-XX-X, Ind. Ann. Stat. § 10-3404 (Burns Supp. 1974); Adkins v. State (1975), Ind., 324 N.E.2d 817; Jethroe v. State (1974), Ind., 319 N.E.2d 133, and that such determination sustains a conviction of voluntary manslaughter. Hopkins v. State, supra.
"In regard to defendant's argument that the State failed to disprove his claim of self-defense, we note that such claim may either be rebutted directly or the State may rely upon the sufficiency of its evidence in chief. Jennings v. State (1974), Ind., 318 N.E.2d 358. Whether the State has successfully borne its burden is a question of fact to be decided by the jury. Suffice it to state, without recapitulating the facts, that the jury heard sufficient evidence of probative value to conclude beyond a reasonable doubt that defendant was not free from fault when he fatally stabbed Larry Rodman."
We find no reversible error, and the judgment of the trial court is affirmed.
GIVAN, C.J., and ARTERBURN, DE BRULER and HUNTER, JJ., concur.
NOTES
[1] XX-X-XX-X [10-3404]. Murder  Second degree.  Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life, or shall be imprisoned in the state prison not less than fifteen [15] nor more than twenty-five [25] years. (Acts 1905, ch. 169, § 350, p. 584; 1969, ch. 95, § 1, p. 214.]
[2] XX-XX-X-X [10-3405]. Manslaughter.  Voluntary Manslaughter. Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, is guilty of voluntary manslaughter, and, on conviction, shall be imprisoned in the state prison for not less than two [2] nor more than twenty-one [21] years.

* * * * *
[Acts 1941, ch. 148, § 2, p. 447; 1969, ch. 224, § 1, p. 851.]