352 N.E.2d 746 (1976)
Frank Dewayne HENSON a/k/a Frank Dewayne Shipman, Appellant,
v.
STATE of Indiana, Appellee.
No. 1175S308.
Supreme Court of Indiana.
August 25, 1976.
*747 John D. Breclaw, Griffith, for appellant.
Theodore L. Sendak, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.
DeBRULER, Justice.
Appellant was charged in a two count indictment with murder in the second degree and kidnapping, tried before a jury which returned a verdict of guilty as charged on both counts, and he received a sentence of fifteen to twenty-five years for murder and life for kidnapping.
Ralph Perez, the main witness for the State testified that he and appellant were driving around in a car on the evening of April 25, 1973, and that appellant asked him to take him to see his ex-wife Linda so that he could talk to her to see if he could get custody of his child. Perez agreed and they drove to a nightclub called Dante's in Gary, Indiana where she worked, arriving there about 9:00 o'clock p.m. Perez stayed with the car and appellant went inside and returned in a few minutes with the victim and opened the door of the car saying, "I want to talk to you Linda." The victim replied, "Can't we talk inside?" At this point appellant pulled a pistol from his pants and told her to get in the car. The witness Perez tried to calm him down but appellant put the gun in his face and told him to get in and drive. They drove around awhile and finally parked on a small gravel road in East Gary at 25th and State Streets. After they stopped the victim agreed to have sexual relations with appellant saying, "If I give it to you, will you leave me alone and take me back." Appellant then said "Sure I will." On her request for privacy, appellant told the witness Perez, "Ralph, step outside of the car and don't move." The testimony of the witness describing the events which immediately followed these instructions is as follows:
"A. So I stepped outside of the car and I was looking for a place to run and I heard the front door open and Frank got out and I started ducking beside the car. I thought he was going to shoot me and Linda stepped out and Linda stepped and Frank started shooting at her, and she started screaming.
* * * * * *
Q. Did you actually see the defendant holding a gun that fired the shot?
A. Yes, I did."
Linda Springman was dead on arrival at a Gary hospital the next day, having died of a bullet wound to the head. Her body was found at 25th and State Streets in Gary, Indiana. James Wilson, husband of appellant's sister, testified that appellant came to his house shortly after 10:00 p.m. on the evening of April 25, 1973, told him that he had shot Linda, and gave him a gun and shells. Some of the shells from the gun were spent. On about April 27, 1973, appellant left Lake County for Chicago, and then moved on to California.
Marsha Perez testified that she is the wife of Ralph Perez and that her husband *748 and appellant left their residence together at about 7:00 p.m. on April 25th. The two returned to that residence after dark, and at the time her husband was shaking and thereafter appellant left their home and as he did so he told them not to tell anybody and that he would be watching them. The next night he returned to their house and stated in her presence that Ralph was the only witness and that he should have got rid of both of them at the same time and then there would be no witnesses. He told Ralph in her presence to keep his mouth shut.
Appellant contends that the State did not prove all the elements of the offenses charged. Indiana Code § 35-1-55-1 defines the offense of kidnapping as follows:
"Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States is guilty of kidnapping... ."
Indiana Code § 35-1-54-1 defines the offense of second degree murder as follows:
"Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree... ."
Appellant argues that the taking of the alleged victim was not shown to have been accomplished through the use of force or against the will of the alleged victim, and that there was inadequate evidence to prove that appellant intended to carry her away from a place within the State, and that therefore there was insufficient evidence to sustain the verdict of guilty of kidnapping. The testimony presented showed, that after appellant and the victim emerged from Dante's and approached the car, he invited her into the car and then she balked, saying, "Can't we talk inside?" Appellant then drew his pistol and told her to get in. He then pointed the gun at the witness Perez who was driving and told him to get in and drive. On appeal, this testimony is sufficient to support the jury's conclusion that the taking of Linda Springman was accomplished by force, was against her will, and was accompanied by an intent to carry her away from Dante's, her place of business.
Appellant argues that the evidence offered by the State was insufficient to support the jury's conclusion that the killing of Linda Springman was done purposely and maliciously. Recently, in McKinstry v. State, (1975) Ind., 338 N.E.2d 636, 640, in dealing with the element of the purpose we stated:
"An act is done purposely if it is willed, is the product of a conscious design, intent or plan that it be done, and is done with an awareness of probable consequences."
And, quoting in part from McKinstry v. State, supra, in Shackleford v. State, (1976) Ind., 349 N.E.2d 150, 154, the element of malice was described as follows:
"An act is done with malice when it is done with `any evil design in general.' In homicide, a purposeful killing is done with malice if it is done neither in self-defense nor in the heat of passion induced by sufficient provocation. McKinstry v. State, supra, at 640, and cases therein."
And in White v. State, (1976) Ind., 349 N.E.2d 156, in regard to proof of malice and purpose in a homicide case, we said:
"As to purpose and malice, this Court, like courts in other jurisdictions, has held repeatedly that the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm permits an inference that the defendant was acting with malice and purpose." (Citations omitted.) 349 N.E.2d at 160.
*749 Appellant would agree with these holdings, but argues that an inference of malice and purpose does not raise because it was not established that he fired the pistol intentionally. We do not agree. According to the testimony of Perez, after the car in which the three were riding stopped, and the victim agreed to have sexual relations with appellant, appellant ordered Perez to step outside of the car and not to move. Appellant then got out of the car. The victim then emerged from the car, and appellant, holding the gun, shot at her. Her body was found at this location with a bullet wound in the head.
From this testimony it appears that appellant was faced with a situation in which Perez was ducking down and taking evasive action, and Linda Springman was trying also to escape. Earlier, in the evening appellant had used the gun in a threatening manner to force the victim to get in the car and to force Perez to drive the car away. At this time, the threat, while unspoken, was clear: Do as I say or I will shoot you. Upon emerging from the car with gun in hand, and with both people attempting to get away from him, contrary to his instructions to them, he carried out the threat, discharging the gun, hitting Linda Springman in the head and killing her. Upon evidence, we cannot find that the jury erred in finding that appellant killed her with malice and purpose.
Appellant contends that the trial court erred in allowing the State to use the rebuttal witness Lupe Garza, because appellant had been unable to depose the witness before the trial. The defense had twice sought to subpoena the witness at the address stated on the indictment for the witness, but each time the sheriff's return showed that the witness had not been found. Here there is no contention that the prosecution thwarted or obstructed these attempts at discovery, and, in the absence of that showing, the remedy of exclusion of testimony would not be appropriate. Gregory v. State, (1972) 259 Ind. 295, 286 N.E.2d 666; Dorsey v. State, (1970) 254 Ind. 409, 260 N.E.2d 800.
Appellant made a motion to depose the witness Lupe Garza, and the trial court recessed the trial and permitted defense counsel the opportunity to question the witness outside the presence of the jury. The witness testified that she was a dancer at the club called Dante's where the victim also worked, and had met and conversed with appellant three times before the night on which the victim was killed, and that on the night of the killing she saw appellant in the club between 9:30 and 10:00 p.m. On appeal, counsel contends that the opportunity afforded by the trial court was inadequate to permit counsel to study and investigate the matter learned about from the witness in the in-court deposition and to present evidence in rebuttal to it. No objection or motion for continuance was made on this ground before the trial court and therefore the issue is not before us in this appeal. Tyler v. State (1968) 250 Ind. 419, 236 N.E.2d 815; Heyverests v. State, (1930) 202 Ind. 359, 174 N.E. 710.
Appellant contends that the in-court identification of appellant by Lupe Garza made before the jury should have been suppressed, because the confrontation between the witness Lupe Garza and the appellant at the in-court deposition which had just occurred "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stoval v. Denno, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Appellant immediately prior to the in-court deposition moved that appellant be permitted to absent himself from counsel's table in order to avoid the risk of implanting the suggestion in the mind of the witness that he was Frank Henson, the man accused. The trial court denied this motion. We hold that the trial court had authority to grant this motion, and perhaps should have, where as here, no prior identification *750 of the accused had been made by the witness. However, the failure to do so, here, was not reversible error and did not result in a denial of due process in the admission of the in-court identification of appellant by the witness. The deposition proceeding was minimally suggestive. There is no indication in the record that appellant was pointed out to the witness prior to her identification of him. At the deposition she was merely asked to point out Frank Henson if she saw him in the courtroom. She did so readily. At that moment she was seated in a courtroom, presided over by a judge, and testifying under oath. The serious courtroom atmosphere served to diminish the impact of any suggestiveness in the situation, and a high degree of probability was shown that the witness' in-court identification did not stem from her brief confrontation at the deposition. Neil v. Biggers, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; Sawyer v. State, (1973) 260 Ind. 597, 298 N.E.2d 440. She had met and talked with appellant on three occasions prior to the night of the killing. These occasions had occurred during a two or three month period before that night. There was, as pointed out by appellant, a lapse of eighteen months between the night of the killing and the day of this witness' in-court identification. However, the prior meetings were cordial and without stress and, in light thereof, the lapse of eighteen months is a minimal negative factor. We also believe the fact that the bar, in which the witness was a dancer, may have been busy on the night of the killing is minimal in impact here, as the likelihood is small that such hubbub would have confused an entertainer of this witness' experience. Under the circumstances, there is no substantial likelihood of misidentification of appellant by this witness.
The conviction is affirmed.
GIVAN, C.J., and ARTERBURN, HUNTER and PRENTICE, JJ., concur.