Ralph U. BROWN, Appellant,

v.

STATE of Indiana, Appellee.

No. 1277S821.

Supreme Court of Indiana.

March 5, 1979.

Kenneth T. Roberts, Wilson, Coleman & Roberts, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Madison Superior Court, appellant Brown was found guilty of theft, two counts of sodomy and of being an habitual criminal. On August 2, 1977, Brown was sentenced to life imprisonment.

The evidence presented at trial revealed that during the summer of 1976, two ten year old boys, T.G. and D.F., became acquainted with appellant. The boys testified that during this time, appellant performed sodomy on each of them about five or six times. The boys said they agreed to these unnatural acts because appellant threatened them and gave them things such as a rifle and a stolen 10-speed bicycle. The evidence further showed that appellant had induced at least one other minor to enter into illicit relationships by offering him a bicycle. It was also shown that appellant had been convicted and imprisoned for vehicle taking in 1940, for armed robbery in 1951, for grand larceny in 1959 and for escaping from prison in 1965.

Appellant presents four issues for our review concerning: (1) the denial of appellant's Motion for Mistrial; (2) the joinder of the theft count to the counts charging sod-

omy; (3) the giving of two preliminary instructions after the trial had begun, and; (4) whether appellant was prejudiced by the late filing of the count charging him with being an habitual criminal and whether there was sufficient evidence to support a conviction on that count.

## I.

Appellant first argues for reversal based upon the trial court's denial of his Motion for Mistrial. This motion was made after it was discovered, midway through trial, that appellant's trial counsel had previously served as deputy prosecutor in which capacity he had signed two or three of the informations charging appellant with the offenses in the instant case. Before denying the motion, the trial judge held a hearing outside the presence of the jurors in which both appellant and the defense attorney testified. Appellant's testimony, in pertinent part, was as follows:

*"Direct Examination*

By: James m. Nave, Attorney for Defendant

Q. And, Ralph, I have informed you, have I not, of the fact that I was, excuse me, in the prosecutor's office at the time that these charges were brought against you?

A. Yes sir.

Q. And I informed you, in fact, that I even participated in bringing these charges against you.

A. Yes sir.

Q. Okay. And I told you that the fact that I was in the prosecutor's office at the time the charges were brought and the fact that I am now representing you as your attorney in defense against the action creates a conflict of interest, have I not?

A. That's right.

Q. And I've also told you that you have a right, if you choose to exercise it, to demand that I not represent you and demand that the Court appoint you another attorney to represent you in these matters, have I not?

A. That is right.

Q. Ralph, is it your wish to have me to continue to represent you in light of those facts or to have the Court appoint someone else who does not have a conflict.

A. I would like the Court to appoint somebody else that doesn't have no conflict.

### QUESTIONS BY COURT

Q. Do you feel as though Mr. Nave, Mr. Brown, has represented you well in this case?

A. Well, being as since he's been in the prosecutor's office there would be some conflict of interest and—

Q. No, no, you're going to have to answer my question. Do you think that he's represented you well?

A. Yes sir.

Q. Has he worked in your best interest?

A. Very diligently.

Q. Has he cooperated with you?

A. Yes. Yes sir.

Q. Do you feel as though you cannot get a fair trial?

A. Not as long as there is conflict of interest. No.

Q. What's the conflict of interest?

A. Being since he's told me that he worked in the prosecutor's office,— helped prepare the papers against me.

Q. So you feel your rights have been prejudiced by that fact?

A. Yes."

Defense counsel, Mr. Nave, was then questioned by the court as follows:

"Q. When you were with the prosecuting attorney's office and you were somehow involved in this case do you remember what your involvement was?

A. No sir, to honestly state I don't remember my involvement. I do have a vague recollection of Ralph Brown's name, but I don't know what I did involving the prosecutor's office.

Q. Do you remember reading any supplements in this case from—that were prepared by police officers or investigators?

A. No sir, I don't remember reading any supplements, however I do know that as a practice in the prosecutor's office before a deputy was supposed to sign an information on authorizing them to bring on the charge he was supposed to have read the supplements. And I made it a practice to do that, read supplements before I would sign information.

Q. But, you do not remember that procedure in this case?

A. No sir, there was so many cases until I can't recall it."

After receiving the above testimony, the trial court denied appellant's mistrial motion with the following ruling:

"JUDGE: The Court's going to find that the defendant is not prejudiced by the fact that Mr. Nave represents him in this case and is not going to continue the case or dismiss or overrule Mr. Nave as the defense attorney. We will proceed."

Appellant does not contend that his trial counsel was ineffective or that he suffered any actual prejudice because of Mr. Nave's handling of his case. Rather, it is argued that the appearance of impropriety raised by defense counsel's technical conflict of interest required the granting of appellant's motion for mistrial. In support of his position, appellant relies upon *Glasser v. United States*, (1942) 315 U.S. 60, 70 S.Ct. 457, 86 L.Ed. 680 and *Tokash v. State*, (1953) 232 Ind. 668, 115 N.E.2d 745. We think these cases are readily distinguishable. In *Glasser*, the United States Supreme Court found a violation of the Sixth Amendment right to effective assistance of counsel where a defense attorney simultaneously represented two co-defendants with divergent interests. In *Tokash*, we ordered a new trial for a defendant whose pauper counsel had served as judge *pro tempore* in various stages of the proceedings against the defendant both before and after trial. There, the attorney, in his capacity as judge *pro tempore*, had set the defendant's arraignment, made a finding of indigency and continued the proceedings without appointment of counsel, made the trial setting and, after having represented the defendant at trial, continued a hearing on the defendant's *pro se* motion for a new trial. The gravamen of our opinion in *Tokash* was that the attorney's conduct had operated to deny defendant his right to counsel at critical stages of the proceedings.

The present case presents an entirely different problem. Here the defense counsel was merely performing a ministerial task when he signed the informations as deputy prosecutor and he testified that he could not recall his involvement in the case. A similar problem was presented by the recent case of *Richard v. State*, (1978) Ind., 382 N.E.2d 899. In that case we held that no reversible error occurred where a judge *pro tempore*, who had accepted a grand jury indictment of the defendant, was later appointed to represent the defendant at trial. While it may have been preferable for the trial court in the instant action to have continued the case and appointed substitute counsel, we cannot say that his failure to do so constituted a clear abuse of discretion or a denial of appellant's right to effective counsel. Accordingly, we hold that under the facts presented, appellant was not entitled to a new trial.

## II.

Appellant next argues that the joinder of the theft count with the sodomy counts constituted fundamental error. At the outset we note that appellant did not file a motion for severance or otherwise object to the joinder until this appeal thus waiving this issue. Moreover, the joinder in this case would seem to have been appropriate in light of the fact that the theft count concerned appellant's possession of a stolen bicycle which was promised to one of the ten year old victims in return for his submission to unnatural sex acts. Joinder was thus proper under Ind.Code § 35–3.1–1–

9(a)(2) which allows joinder when the offenses constitute parts of a single scheme or plan.

### III.

■ After the jury had been sworn, the trial court gave sixteen preliminary instructions. However, the judge inadvertently failed to give instructions embodying the two statutes appellant was being charged under along with the elements of the two offenses. During the course of the proceedings this oversight was brought to the court's attention when defense counsel raised the issue as an alternative ground for the mistrial motion discussed in Issue I, *supra*. The court responded to appellant's objection by giving the two deleted instructions. Appellant now contends that the giving of these instructions out of order and without rereading all preliminary instructions was reversible error. We disagree. The content of the two objectionable instructions was not such as would improperly highlight certain evidence. We fail to see how appellant was prejudiced by this irregularity and accordingly find no reversible error in this issue.

### IV.

■ Appellant's two final assignments of error relate to the count charging him with being an habitual criminal. It is first argued that because this count was filed three days before trial, the appellant should have been granted a continuance in order to prepare a defense to the charge. However, no request for a continuance was made by appellant. It is not error for a trial court to fail to grant a continuance which was never requested. *Henson v. State*, (1976) Ind., 352 N.E.2d 746, 749.

■ Appellant also maintains that the evidence was insufficient to support his conviction upon the habitual criminal count. The evidence most favorable to the state on this issue consisted primarily of certified copies of prison records showing that one Ralph U. Brown had in the past been convicted and imprisoned as follows: one to ten years for vehicle taking in 1940; ten years for armed robbery in 1951; one to ten years for grand larceny in 1959, and one year, for escaping from prison, to be served at the expiration of the sentence for grand larceny. The records for each of appellant's prior commitments were duly certified by the appropriate prison officials and were thus admissible as public documents. *Eldridge v. State*, (1977) Ind., 361 N.E.2d 155, 158; Ind.R.Tr.P. 44(A)(1). Each set of records contained, *inter alia*, a fingerprint card, appellant's signature and photographs of appellant, however, the state did not present any expert handwriting or fingerprint testimony which would have connected appellant to the commitments reflected in the records. Without such testimony, appellant contends that the evidence was insufficient under the standard set out in *Smith v. State*, (1962) 243 Ind. 74, 181 N.E.2d 520. Appellant's argument ignores the existence of the photographs in each set of prison records; an identification card contained in the records of appellant's armed robbery commitment showing his age, height, weight, complexion, hair and eye color, and; the in-court testimony of John Raska, the parole officer at the state prison in Michigan City, who identified appellant before the introduction of the records pertaining to the latter two commitments. We think this evidence was sufficient to support the jury's conclusion that appellant was the same Ralph U. Brown who had been convicted and imprisoned for four felonies in the past.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PRENTICE, J., dissents with opinion.

PRENTICE, Justice, dissenting.

I dissent from the opinion of the majority as to Issue I. Although it does not appear that defense counsel's prior contact with the case, as a deputy prosecutor, inhibited the defense, it is clear that the defendant was fearful that it would, or might. An essential ingredient in the satisfactory at-

torney-client relationship is the client's implicit trust. This is not to say that the court must, in every instance, provide pauper counsel to the complete approval of the indigent. Where, as here, however, a circumstance comes to light which could, in the mind of a reasonable man, cast a shadow upon the integrity of the proceedings, and the defendant is free from fault or laches, the image of integrity should be preserved even at the expense of a wasted trial.

Although we may be confident that counsel performed properly and ably, it is clear from the record that the appellant would not have accepted this attorney in the first instance, nor would the attorney have accepted employment, had they been aware of the attorney's prior contact with the case. Nor would the trial court, at that stage, have forced the relationship.

We recently imposed public sanctions upon very able and reputable attorneys because of a negligent failure to disclose adequately a conflict of interest, although there was no indication of a mal-intent or of harm to the client. We took that action, with considerable reluctance, because we believed such to be necessary to preserve and advance the image of professional integrity and because the dilemma, although regretable, was, nevertheless, of their making.

Here we have a similar situation but with even greater potential for harm. It was counsel's failure to recognize his position of apparent conflict at the time of his appointment that created the problem. This error was not chargeable to the appellant, however, who protested the continuance of the relationship at his first opportunity. Although the declaration of a mistrial would have occasioned a judicial waste, it is my opinion that such would have been an evil lesser than the forced continuance of the attorney-client relationship, after the seeds of mistrust had fallen.