Arthur W. HUGHES, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 71A03–8612–CR–342.

Court of Appeals of Indiana, Third District.

July 27, 1987.

---

Robert L. Stephan, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Judge.

Defendant-appellant Arthur W. Hughes appeals his conviction for reckless homicide, a Class C felony. The jury determined that Hughes was guilty but mentally ill.

The evidence relevant to this appeal discloses that on October 8, 1984 Hughes disregarded a red traffic signal and struck a car. At the time of the accident Officer Edward Miley of the South Bend Police Department had stopped his car at the intersection. Officer Miley noticed a Chevrolet Caprice on the cross street, entering the intersection. Officer Miley also noticed a yellow Cadillac travelling in the opposite direction which appeared to accelerate at the intersection. Hughes, who was driving the Cadillac, entered the intersection at a high rate of speed, disregarded the red light and struck the Caprice in the driver's door. The Caprice was pushed into Officer Miley's squad car. Then the Cadillac struck the squad car and pushed it to the curb. The driver of the Caprice died as a result of injuries sustained in the collision.

At his trial, Hughes interposed an insanity defense. Several witnesses testified as to Hughes' behavior just prior to the collision and after the collision occurred. Officer Miley, who had seen Hughes at a coffee shop approximately 30 times prior to October 8, 1984, stated that he had not noticed anything unusual about Hughes' behavior. On the morning of October 8, Hughes

drove to the police station and conversed with two police officers. Hughes' conversation was somewhat disjointed. The officers thought that Hughes behaved peculiarly, but not so peculiar as to warrant detaining or following him. After the accident Hughes was uncooperative, then calm and business-like. Hughes voluntarily entered the hospital for psychiatric observation after the collision.

On appeal Hughes raises several issues for review. As restated and consolidated, the issues are:

(1) whether sufficient evidence supported the jury's verdict;

(2) whether the evidence led inalterably to the conclusion that Hughes was insane at the time of the occurrence;

(3) whether the trial court erred in failing to grant Hughes' motion to dismiss the charging Information;

(4) whether the trial court erred in failing to instruct the jury on involuntary manslaughter as a lesser included offense;

(5) whether the trial court erred in instructing the jury on a statute which regulates speeds for vehicular traffic;

(6) whether the trial court erred in refusing certain instructions tendered by Hughes; and

(7) whether the trial court erred in admitting into evidence Hughes' statements to a police officer.

Hughes first questions the sufficiency of the evidence. He argues that the evidence did not establish recklessness, but instead demonstrated negligence. The reckless homicide statute, IND.CODE § 35–42–1–5 (1982), provides that "[a] person who recklessly kills another human being commits reckless homicide, a Class C felony." "Recklessly" is defined as conduct in which a person engages "in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." IND.CODE § 35–41–2–2 (1982).

Although Hughes presented testimony to the contrary, the evidence showed that Hughes approached the intersection at a high rate of speed. Officer Miley testified that Hughes' speed was approximately 60 miles per hour in a 25–35 mile per hour zone. A calculation performed by an expert in accident reconstruction fixed Hughes' speed at over 60 miles per hour. Also, Hughes neither stopped nor attempted to brake for the red signal which controlled traffic in the direction he was proceeding. Hughes maintains that these acts amount only to negligence, not recklessness.

While it is true that mere negligence or inadvertance cannot support a conviction for reckless homicide, *Cichos v. State* (1962), 243 Ind. 187, 191, 184 N.E.2d 1, 3; the jury was instructed on negligence and that negligent conduct would not constitute recklessness. "The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which ... the defendant's conduct falls." *Cichos, supra,* 243 Ind. at 192, 184 N.E.2d at 3.

It is well settled that a court on review may not weigh the evidence or judge the credibility of witnesses. *Galmore v. State* (1984), Ind., 467 N.E.2d 1173, 1176. Only the evidence most favorable to the State, together with any reasonable inferences to be drawn therefrom, may be considered. *Zachary v. State* (1984), Ind., 469 N.E.2d 744, 750.

In the present case the evidence most favorable to the State demonstrates that Hughes accelerated as he approached an intersection controlled by a traffic signal, he disregarded a red traffic light and struck a car. Further, he was travelling at approximately 60 miles per hour in a 25–35 mile per hour zone. In *Taylor v. State* (1983), Ind.App., 457 N.E.2d 594, 597–598, this Court determined that an excessive rate of speed alone may support a conviction for reckless homicide. Hughes' speed, coupled with the other evidence, sufficiently sustain the jury's verdict as to reckless homicide.

Hughes' second issue alleges that the verdict of "guilty but mentally ill" was against the weight of the evidence. Hughes asserts that because health profes-

sionals testified that in their opinions Hughes was insane at the time of the occurrence, the jury could only find him insane.

■ A plea of not guilty by reason of insanity places the burden of proof upon the defendant. *Green v. State* (1984), Ind., 469 N.E.2d 1169, 1171. Necessarily, Hughes must demonstrate that the finding of mentally ill, rather than insanity, was contrary to all evidence presented. *See, Turner v. State* (1981), Ind., 428 N.E.2d 1244, 1246. Although several witnesses testified regarding Hughes' peculiar behavior, there was testimony that Hughes behaved calmly and in a business-like fashion. The witnesses agreed that the manic-depressive disorder from which Hughes' suffers, has periods of remission. During a remissive stage of the illness, Hughes would be fully cognizant of right and wrong. Additionally, a jury is entitled to consider both lay testimony and expert testimony when determining the issue of sanity. *Gentry v. State* (1984), Ind., 471 N.E.2d 263, 270. The evidence on the issue of sanity did not lead inalterably to a conclusion that Hughes was insane at the time of the occurrence.

Next, Hughes contends that the trial court erred in failing to dismiss the charging Information because it failed to disclose any prohibited conduct, other than violations of traffic laws. Our Supreme Court in *Patton v. State* (1962), 242 Ind. 477, 179 N.E.2d 867, reviewed the sufficiency of the allegation contained in a reckless homicide affidavit. The Court concluded that an allegation that appellant drove a car on a narrow road at a speed of 80 miles per hour before striking a utility pole, adequately apprised the appellant of the nature of the crime charged. *Patton, supra,* 242 Ind. at 482, 179 N.E.2d at 869–870.

■ In the present case, the Information alleged that Hughes drove his car at a speed of approximately 60 miles per hour in a 25 mile per hour speed zone, and that Hughes disregarded a red traffic signal and struck the Caprice, thereby causing the death of the driver of the Caprice. The Information stated sufficient facts to apprise Hughes of the charge and allow him to prepare a defense to the charge.

[6] Hughes fourth issue questions the trial court's failure to instruct the jury on involuntary manslaughter as a lesser included offense of reckless homicide. Involuntary manslaughter is defined as the killing of another while committing a Class C or Class D felony, or while committing a Class A misdemeanor that inherently poses a risk of serious bodily injury, or while committing a battery. IND. CODE § 35–42–1–4 (1982). Hughes reasons that the collision was tantamount to a battery; thus, the jury should have been instructed on involuntary manslaughter. Without accepting Hughes' statement that a battery occurred, this Court previously determined that battery is not a lesser included offense of reckless homicide. *Comer v. State* (1981), Ind.App., 428 N.E.2d 48, 54. Because Hughes' conduct does not fall into any other category of conduct proscribed by the involuntary manslaughter statute, the trial court did not err in failing to instruct the jury on that crime.

■ Hughes next contends that the trial court erred in instructing the jury on a traffic statute which regulates the speed of vehicular traffic. The instruction, based upon IND.CODE § 9–4–1–57 (1983 Supp.), stated:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.

The driver of every vehicle shall, drive at an appropriate reduced speed when approaching and crossing an intersection."

Hughes concedes that the instruction was a proper statement of the law, but he argues that it was not relevant.

Instruction of the jury lies largely within the discretion of the trial court. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 581. Even so, tendered instructions which do not

involve evidence and principles of law applicable to the case, should be refused. *McDonald v. State* (1975), 264 Ind. 477, 480, 346 N.E.2d 569, 572. The evidence in the present case warranted the instruction.

In his reply brief, Hughes waived any possible error in the refusal of certain of his tendered instructions. It is worthy of note that the bulk of the instructions tendered by Hughes were covered by the instructions given by the trial court.

Hughes' final issue questions the propriety of admitting into evidence his statements to a police officer after the officer gave Hughes *Miranda* warnings. Hughes complains that there was no indication that the waiver of his Fifth Amendment right to silence was voluntary.

Our Supreme Court in *Turner v. State* (1981), Ind., 428 N.E.2d 1244 addressed this issue. In *Turner* a statement given by the defendant, who had interposed an insanity defense, was deemed admissible as evidence relevant to the question of sanity. *Turner, supra,* 428 N.E.2d at 1247. While recognizing the potential for abuse of such testimony, the Court noted that the fact that Turner had the presence of mind to request an attorney bore logical relevance to the issue of sanity. 428 N.E.2d at 1247.

Here, Hughes' statements that the accident was his fault, that he was trying to show his son how fast his car would run, and that he did not reduce his speed for the red light, bore relevance to his ability to appreciate the consequences of his acts. The statements were properly admitted as evidence probative of the issue of sanity.

Hughes alleges that even if the statements were admissible on the issue of sanity, the jury should have been instructed to consider the evidence only for that limited purpose. Hughes failed to include this allegation of error in his motion to correct errors or in the attached memorandum of law. Therefore, the issue is waived. *Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1083.

The judgment of conviction is affirmed. Affirmed.

STATON and MILLER, JJ., concur.