Robin **CARRIGG**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9706–CR–254.

Court of Appeals of Indiana.

May 4, 1998.

Transfer Denied July 8, 1998.

**394**

Stephen Gerald Gray, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General of Indiana, Kimberly MacDonald, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Robin Carrigg appeals her conviction by jury of reckless homicide.[1]  We affirm.

### ISSUES

I.  Whether there is sufficient evidence to support Carrigg's conviction.

II.  Whether the trial court erred in refusing to give Carrigg's tendered jury instructions.

III.  Whether the trial court erred in admitting evidence.

### FACTS

The facts most favorable to the verdict reveal that on November 10, 1995, Robin Carrigg drove her Ford Bronco to the residential neighborhood where her estranged husband, Ronald McGarr, was painting the exterior of a house.  Carrigg and McGarr

began arguing, and McGarr told Carrigg to leave.  Carrigg drove around the block and returned three or four times.  Carrigg threatened McGarr and told him that her brother was going to "kick [his] ass."  (R. 180).  McGarr, who was standing next to the driver's side of the Bronco, stepped up on the vehicle's running board.  McGarr and Carrigg continued to argue, and Carrigg "floored" the gas pedal, (R. 185), and drove the Bronco down a residential street, which had a 30 mile per hour speed limit and cars parked on both sides of the street, at 50 miles per hour.  McGarr held on to the driver's side mirror, and told Carrigg to stop.  Carrigg; who continued to yell at McGarr about some money that he owed her, drove the Bronco through a stop sign and hit a vehicle driven by 59 year-old Martha Via.

Via's aorta, was dissected and her pelvic bone and several of her ribs were fractured.  Via remained hospitalized for several months as a result of her injuries, and she was eventually placed in a nursing home.  On May 29, 1996, Via was re-admitted to the hospital from the nursing home.  The following day, Dr. Steve Samuels reviewed her medical records and learned that she was relatively healthy until November 1995, when her aorta was dissected in the accident.  Dr. Samuels diagnosed Via as currently suffering from adult respiratory distress syndrome, a medical complication wherein the "lungs fill with fluid and develop—you can go on to develop respiratory failure requiring mechanical ventilation."  (R. 283).

Dr. Samuels treated Via, and she was discharged from the hospital to the nursing home on June 4, 1996.  Via was subsequently discharged from the nursing home to her home for a few days before she was re-admitted to the hospital on June 20, 1996, suffering from pneumonia sepsis, an infection of the bloodstream.  Dr. Samuels further explained Via's illness as follows:

She was hypertensive, had low blood pressure, she went on to develop a severe necrotizing pneumonia, again a repeat episode of adult respiratory distress syndrome, developed massive pulmonary hemorrhage.  The sepsis was found to be

1.  Ind.Code 35–42–1–5.

caused by a bacteria called methacyline resistance staphoris that we see in patients who are frequently hospitalized for prolonged periods of time. And then she went on and developed full-respiratory failure, applying intubation and treatment with mechanical ventilation, respirator.

(R. 289).

Via remained on the ventilator until July 8, 1996, when there were no signs of improvement and the patient, although she was on the ventilator, she was able to write, expressed wishes to her family, as well as multiple nursing staff, that she had enough of this life support, she had gone through. And she wrote us in notes that she had gone through a prolonged protracted illness and she was finally just tired and wanted to give up. She didn't want to keep being kept alive by artificial life support.

(R. 295–96). At that point, according to Dr. Samuels, Via's "chances for a meaningful recovery were nil." (R. 297). Via was removed from the artificial life support system and died the same day. The cause of her death was necrotizing pneumonia. According to Dr. Samuels, Via "would have never developed this necrotizing pneumonia and the complications there of had she not suffered ... the injuries of the initial motor vehicle accident in November of '95 ... and then required such a prolonged protracted hospitalization and care." (R. 300). Carrigg was subsequently convicted by jury of reckless homicide.

## DECISION

### I. Sufficiency

■ Our standard of review for sufficiency of the evidence is well-settled. We will neither reweigh the evidence nor resolve questions of witness credibility, but will look only to the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Spencer v. State*, 660 N.E.2d 359, 362 (Ind.Ct.App.1996).

Ind.Code 35–42–1–5 provides that a "person who recklessly kills another human being commits reckless homicide, a class C felony." Ind.Code 35–41–2–2(c) provides that a "person engages in conduct 'recklessly' if he en-

gages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a deviation from acceptable standards of conduct."

■ Carrigg first posits that there is insufficient evidence to support her conviction of reckless homicide because the "State failed in its burden to prove that [she] intended her conduct of running the stop sign." Carrigg's Brief, p. 20. Carrigg misunderstands the State's burden. The State had only to prove that Carrigg engaged in conduct in plain, conscious and unjustifiable disregard of the harm that might result, and that the disregard was a deviation from acceptable standards of conduct.

■ Our review of the record reveals that Carrigg drove a Ford Bronco 50 miles per hour down a narrow residential street, which had a 30 mile per hour speed limit and cars parked on both sides, while her former husband was standing on the running board, holding onto the driver's side mirror. At the same time, while her estranged husband was telling her to stop the vehicle, Carrigg was yelling at him about some money that he owed her. An excessive rate of speed alone may support a conviction for reckless homicide. *Green v. State*, 650 N.E.2d 307, 309 (Ind.Ct.App.1995); *Hughes v. State*, 510 N.E.2d 741, 743 (Ind.Ct.App.1987). Carrigg's speed, coupled with the other evidence, is sufficient to support her conviction. *See Hughes.*

■ Carrigg next contends that there was insufficient evidence to support her conviction because "her actions were not the direct and proximate cause of [Via's] death." Carrigg's Brief, p. 8. Rather, Carrigg posits that "Martha Via and her family made the choice to terminate medical treatment which directly caused her death." Carrigg's Brief, p. 9. Therefore, according to Carrigg, an intervening cause was responsible for Via's death.

■ An intervening cause is an independent force that breaks the causal connection between the actions of the defendant and the injury. *Spencer*, 660 N.E.2d at 362. An individual who inflicts injury upon another is

deemed by law to be guilty of homicide if the injury contributed mediately or immediately to the death of that person. *Id.* In order for an intervening cause to break the chain of criminal responsibility, the intervening cause must be so extraordinary that it would be unfair to hold the defendant responsible for the actual result. *Id.*

In the *Spencer* case, Spencer beat Siders. Following hospitalization, Siders was placed on a life support system. Due to Siders' poor prognosis, his family and physicians elected to remove him from the artificial life support system. Shortly thereafter, Siders died, and Spencer was convicted of voluntary manslaughter. On appeal, Spencer contended that there was insufficient evidence to support his conviction because Siders' family's decision to remove Siders from artificial life support was an intervening cause responsible for Siders' death.

This court reviewed the record which revealed that a medical doctor testified that the cause of Siders' death was blunt force injuries to the head, neck and face. Further, Siders' treating physician testified that continuing treatment of Siders was "in all probability a futile exercise," and if life support was continued, the best that Siders' family could hope for was a " 'persistent vegetative state.' " *Id.* at 362. Accordingly, we determined that Spencer's beating caused Siders' death, and that there was no intervening cause.

The facts before us are analogous to those in *Spencer.* Carrigg's Bronco hit Via's car, and Via was severely injured. Following a prolonged hospitalization, Via was placed on a life support system. Due to Via's poor prognosis, Via, her family and her physicians elected to remove her from artificial means of life support. Via died that day. At trial, Dr. Samuels testified that Via's cause of

death was necrotizing pneumonia which resulted from the November 1995 motor vehicle accident which required a "prolonged protracted hospitalization and care." [2] (R. 300). Dr. Samuels further testified that Via's "chances for a meaningful recovery were nil." (R. 297). Accordingly, the automobile accident caused Via's death, and there was no intervening cause. *See Spencer* and cases cited therein.

Carrigg next contends that the evidence is insufficient to support her conviction because the "evidence shows that Martha Via may have died from treatment related to her chronic anemia or her urinary tract infection—not the trauma suffered eight months earlier." Carrigg's Brief, p. 12. First, we find no evidence in the record to support Carrigg's contention. Second, even if we did, this argument is nothing more than an invitation for us to reweigh the evidence, which we cannot and will not do. *See Spencer.*

Lastly, Carrigg contends that there is insufficient evidence to support her conviction because the "State failed to comply with I.C. 36–2–14–6 and I.C. 16–[3]7–3–7." Carrigg's Brief, p. 12. Carrigg posits that "I.C. 16–[3]7–3–7 requires the attending physician to notify the coroner for investigation if the death of someone is caused by other than natural causes." Carrigg's Brief, p. 12. However, compliance with the statute is not an element of reckless homicide. Therefore, we fail to see, and Carrigg fails to allege, how Dr. Samuels' failure to notify the coroner of Via's death results in either insufficient evidence to support the conviction or harm to Carrigg. Her contention is therefore without merit.

Carrigg further posits that "I.C. 36–2–14–6 requires that *in every homicide* the coroner *shall* conduct an investigation of how the person died and determine the cause of

---

2. In a related argument, Carrigg posits that the trial court should not have permitted Dr. Samuels to "express an opinion relating the deceased's pneumonia to events eight months earlier ... [because Dr. Samuels did not have] sufficient facts or data upon which to validly form an opinion." Carrigg's Brief, p. 14. We disagree.

Dr. Samuels testified that before treating Via, he reviewed Via's medical records which detailed her "past medical history, as well as the

more recent history of the motor vehicle accident and the complications involved with that." (R. 279–80). Dr. Samuels further testified that he regularly reviews medical records and is able to draw conclusions based upon his review of the records. Clearly, Dr. Samuels had sufficient facts or data upon which to validly form an opinion relating Via's cause of death to the automobile accident. We find no error.

death. In addition, an autopsy must be performed *or* two physicians who have made separate examinations must certify the same cause of death." Carrigg's Brief, p. 12 (Emphasis in the original). Without determining whether Carrigg has correctly stated the statutory requirements, compliance with the statute is not an element of reckless homicide. Therefore, we fail to see, and Carrigg again fails to allege, how noncompliance with the statute results in either insufficient evidence to support the conviction or harm to Carrigg. We therefore find no error.[3]

## II. *Jury Instructions*

Carrigg next argues that the trial court erred in refusing to give her tendered jury instructions. We disagree.

■ It is well-settled that instructing the jury is within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion. *Dayhuff v. State*, 545 N.E.2d 1100, 1102 (Ind.Ct.App. 1989), *trans. denied.* In determining whether the refusal to give an instruction was correct, we consider: 1) whether the tendered instruction is a correct statement of the law; 2) whether there is evidence to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions. *Id.*

■ First, Carrigg posits that the trial court erred in refusing to give her tendered instruction number 2 which provides as follows:

The defense of duress is defined by law as follows:

It is a defense that the person who engaged in the prohibited conduct was compelled to do so by threat of imminent serious bodily injury to himself or another person.

Compulsion exists only if the force, threat, or circumstance are such as would render a person of reasonable firmness incapable of resisting the pressure.

(R. 35). We disagree.

The statute defining the duress defense specifically states that the defense is not applicable to someone who "committed an offense against the person as defined in IC 35–42." Ind.Code 35–41–3–8(b)(2). Reckless homicide is an offense against the person, I.C. 35–42–1–5, and the defense of duress is therefore inapplicable in this case. *See Parker v. State*, 567 N.E.2d 105 (Ind.Ct.App. 1991), *trans. denied.* The trial court did not err in refusing to give Carrigg's tendered instruction number 2.

■ Carrigg further posits that the trial court erred in refusing to give her tendered instruction number 4 which provides as follows:

In order to meet its burden of proof on the charge of reckless homicide, the State is required to prove that the defendant voluntarily acted recklessly, not merely negligently, and that such conduct was the direct and proximate cause of the victim's death.

If you find that the State failed to prove beyond a reasonable doubt that Robin Carrigg acted voluntarily or that her conduct was not the direct and proximate cause of the victim's death, then you should find the defendant not guilty.

(R. 37). Again, we disagree.

As to the general application of Carrigg's tendered instruction, its substance was covered by other instructions. Specifically, a part of the trial court's final instruction included I.C. 35–42–1–5 and I.C. 35–41–2–2(c) which provide that a person who kills another human being while engaged in conduct in plain, conscious and unjustifiable disregard of the harm which involves a deviation from acceptable standards of conduct commits reckless homicide. The trial court also gave instructions defining the State's burden of proof and the fact that all elements of the charged crime must be proved. The jury was therefore adequately instructed. *See*

---

**3.** Carrigg further contends that there is insufficient evidence to support her conviction because she was "unfairly prejudiced by exclusion of testimony of the Marion County Coroner." Car-

rigg's Brief, p. 15. However, because we feel that this contention is better addressed as an evidentiary issue, we will address it in part III of our decision.

*Sanders v. State,* 466 N.E.2d 424 (Ind.1984). Further, any error in the refusal of this instruction was harmless because Carrigg's conviction "clearly was sustained by overwhelming evidence and the jury could not have reasonably found otherwise." *Id.* at 428. We find no error in the trial court's refusal of Carrigg's tendered instructions.

### III. *Evidence*

■ Trial courts are afforded great latitude with respect to the admissibility of evidence, and their rulings upon evidentiary matters will not be disturbed absent an abuse of discretion resulting in the denial of a fair trial for the accused. *Lycan v. State,* 671 N.E.2d 447, 453 (Ind.Ct.App.1996).

Carrigg first contends that the trial court abused its discretion in excluding the testimony of the Marion County Coroner. We disagree.

■ On January 16, 1997, the State filed a "List of Additional Witnesses" wherein it listed Dr. Samuels as a witness. Trial began on January 27, 1997. After the State rested, Carrigg attempted to call Dr. John McGoff, the Marion County Coroner, to rebut Dr. Samuels' testimony. The State objected to the testimony because Carrigg had not disclosed Dr. McGoff as a rebuttal witness. The trial court heard argument on the issue and ruled that Dr. McGoff could not testify as a rebuttal witness because Carrigg had not previously disclosed him.

■ Our supreme court has held that the "nondisclosure of a rebuttal witness is excused only when that witness was unknown and unanticipated; known and anticipated witnesses, even if presented in rebuttal, must be identified pursuant to a court order, such as a pre-trial order, or to a proper discovery request." *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 179 (Ind.1993). Carrigg contends that Dr. McGoff was an "unknown and unanticipated witness for the defense." Carrigg's Brief, p. 17. Specifically, she contends that she did not anticipate the need for Dr. McGoff's rebuttal testimony until she learned ten days before trial that Dr. Samuels would be testifying for the State.[4]

Carrigg misunderstands the meaning of unknown and unanticipated. A "known" witness refers to knowledge of the existence of the witness. *Id.* An "anticipated" witness is one which a party or her counsel anticipates the need for at trial. *Id.* Here, Carrigg anticipated the need for Dr. McGoff's rebuttal testimony before trial when she learned that Dr. Samuels would be testifying for the State. Clearly, Dr. McGoff was a known and anticipated witness. Therefore, the trial court did not err in excluding his testimony.

■ Carrigg further contends that the trial court erred in admitting into evidence during Dr. Samuels' testimony a photograph of Via which was taken in November 1995, approximately three weeks after the accident. Specifically, Carrigg posits that because Dr. Samuels did not begin treating Via until May 1997, the doctor "could not testify the picture truly and accurately depicted the way Martha Via appeared in November 1995." Carrigg's Brief, p. 23.

However, our review of the record reveals that the photograph was not admitted for the purpose of depicting the way that Via appeared in November 1995. Rather, the photograph was admitted for identification purposes. Specifically, Dr. Samuels testified that the woman he began treating in May 1996 was the woman depicted in the photograph. We find no abuse of the trial court's discretion.

■ Lastly, Carrigg posits that the trial court erred in admitting into evidence a police officer's testimony that 1) Carrigg was not upset at the scene of the accident, 2) Carrigg's driver's license was expired at the time of the accident, and 3) the Bronco that Carrigg was driving was not properly registered. According to Carrigg, this evidence was irrelevant.

■ Assuming that the evidence was irrelevant, erroneously admitted evidence does not mandate reversal when the admission of the evidence can be construed as harmless error. *Lambert v. State,* 675 N.E.2d 1060, 1065 (Ind.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2417, 138 L.Ed.2d 181 (1997), *reh'g denied,* —— U.S.

---

4. In a related argument, Carrigg posits that the *"State* violated the discovery rules by listing Dr. Samuels as a witness only ten days before trial."

Carrigg's Brief, p. 16–17. (Emphasis in the original). This issue is not properly before us because it was not raised at trial.

——, 118 S.Ct. 7, 138 L.Ed.2d 1040 (1997). An evidentiary error is harmless if the reviewing court determines that the "probable impact [of the improperly admitted evidence] on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995).

Our review of the record reveals that Carrigg drove her Bronco 50 miles per hour down a residential street, which had a 30 mile per hour speed limit and cars parked on both sides, while her estranged husband was standing on the running board, holding onto the driver's side mirror. Carrigg, who was yelling at her former husband about some money that he owed her, drove the vehicle through a stop sign and hit a vehicle driven by 59 year-old Martha Via. Via was seriously injured and subsequently died as a result of medical complications resulting from the accident. In light of all the evidence in this case, the officer's testimony was sufficiently minor so as not to affect Carrigg's substantial rights.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.